UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | | |
|---|---|---|
| MELISSA JOHNSON, Personal Representative of the Estate of the late Timothy Johnson, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case #1:25-cv- 80 |
| WESLEY SHIFFLETT, | ) ) | AMENDED COMPLAINT |
| and | ) ) ) | |
| MICHAEL CONNER, WILLIAM ARNEST, ROBERT BAUER, MATTHEW LANE, JONATHAN STEIER, SCOTT COLWELL, CAROLYN KINNEY, DEREK GREY, WILSON LEE, TONNY KIM, ROBERT BLAKELEY and KEVIN DAVIS, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Preliminary and Jurisdictional Statement

1. Defendant Wesley Shifflett, a Fairfax County police sergeant with a history of excessively rapid recourse to guns, shot and killed Timothy Johnson, who was running away from him after having stolen a pair of sunglasses from a Nordstrom's store in the Tyson's mall. Mr. Johnson, who had fallen to the ground, was unarmed and posed no danger to Sgt. Shifflett or anyone else. As a result of his shooting Mr. Johnson, Sgt. Shifflett was fired by the police, criminally prosecuted for involuntary manslaughter, and convicted of reckless handling of a firearm. His mother and personal representative of his estate now brings suit against Sgt. Shifflett and also against the persons who should have supervised him properly, given his existing record of recent excessive recourse to firearms when dealing with persons suspected of

non-violent offenses. This case arises under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983. This Court has jurisdiction under 28 U.S.C. §1331 and also 28 U.S.C. §1332, plaintiff being a citizen of Maryland, all defendants being citizens of Virginia, and the matter in controversy exceeding $75,000 exclusive of interest and costs. The complaint also states claims under Virginia's Wrongful Death Act, Code of Va. §8.01-50 and under the common law of Virginia.

Parties

2. Plaintiff Melissa Johnson is the mother of the late Timothy Johnson and the duly appointed administrator of his estate. Mr. Johnson, who was never married, is survived by three minor children, I.J., M.R. and S.S.

3. Defendant Wesley Shifflett is a former Fairfax County police officer who was fired by the police department and criminally convicted as a result of his shooting Mr. Johnson. He is sued in his individual capacity for damages.

4. Defendants Michael Conner, William Arnest, Robert Bauer, Matthew Lane, Jonathan Steier, Scott Colwell, Carolyn Kinney, Derek Gray, Wilson Lee, Tonny Kim, Robert Blakeley and Kevin Davis were each in supervisory capacities in relation to defendant Shifflett in the period January 2022-February 2023. Each knew or should have known of defendant Shifflett's repeated, reported and documented inappropriate recourse to his service weapon in the year preceding his killing Mr. Johnson. Each was in a position to take appropriate action to abate defendant Shifflett's notorious too-ready brandishing of his firearm at unarmed persons suspected – correctly or incorrectly – of non-violent offenses. Each could have mandated

additional training for defendant Shifflett, had him undergo a fitness-for-duty examination, or subjected him to appropriate discipline, up to and including recommending or effecting termination. But they did nothing. These defendants, known collectively herein as "the supervisory defendants," are sued in their individual capacities for damages for reckless failure to supervise Mr. Shifflett.[1]

Claim for Relief

The Death of Timothy Johnson

5. On or about February 22, 2023, Mr. Johnson stole a pair of sunglasses from the Nordstrom store in Tyson's Corner.

6. Defendant Shifflett was alerted to a suspected theft by store security. He and another officer responded to the store and followed Mr. Johnson as he proceed to run away from it. At all relevant times, defendant Shifflett did not know the value of the sunglasses Mr. Johnson was suspected of having stolen.

---

[1] When this complaint was initially filed, plaintiff knew the names of, and sued, only two of defendant Shifflett's supervisors. In order to have the necessary supervisory personnel brought before the Court prior to the February 22, 2025 expiration of the applicable period of limitations, plaintiff filed an emergency motion for leave to discover defendant Shifflett's other supervisors in the relevant one-year period, which motion was granted. ECF 7. On February 6, 2025, the Police Department provided the undersigned with the names of all persons in a supervisory position to defendant Shifflett. The undersigned thereupon advised the county attorney on the case that he sought to file suit only against supervisors who were, or under police protocol should have been, aware of defendant Shifflett's recource to his gun in the year preceding Mr. Johnson's death, and asked that the list of supervisors be shortened to include only such supervisors. No shortened list having been forthcoming, all defendant Shifflett's supervisors identified by the police department have been sued in this amended complaint.

7. Defendant Shifflett pursued Mr. Johnson in a grossly negligent manner, in the dark into a one-acre patch of undeveloped land filled with trip hazards, thick underbrush and vines and on terrain that sloped and in which defendant Shifflett as well as Mr. Johnson tripped and fell.  The land was in a busy commercial area in close proximity to a parking garage, office buildings, and retail establishments where potential pedestrians, shoppers, office workers and bystanders could be at risk in the event of a shooting.  Defendant Shifflett negligently and recklessly ignored a ready alternative, in the form of setting up a police perimeter to apprehend Mr. Johnson, a plan for which was being put in place by officers in communication with defendant Shifflett.  At no time was there evidence that Mr. Johnson had committed a violent or assaultive act.  For all defendant Shifflett knew, Mr. Johnson might have committed a petty larceny.

8. Defendant Shifflett shouted to Mr. Johnson: "Get on the ground."  Mr. Johnson went to the ground, either because he did as directed or because he fell.

9. Once Mr. Johnson went to the ground, defendant Shifflett did not undertake to engage Mr. Johnson in any sort of de-escalatory dialogue.  Other than shouting for Mr. Johnson to get on the ground, which Mr. Johnson did, defendant Shifflett took no steps to de-escalate the situation before shooting Mr. Johnson.

10. Defendant Shifflett then shot Mr. Johnson in the chest.  Mr. Johnson, wounded and in pain, called for help.  He was transported to the hospital, where he then died.

11. Defendant Shifflett has on different occasions stated to the police or in court that (a) he shot Mr. Johnson intentionally; (b) he shot him accidentally when he, Shifflett, tripped and fell; and (c) he cannot state with certainty if he fired at Mr. Johnson intentionally or accidentally.

12. At no time did Mr. Johnson have a weapon. Neither defendant Shifflett nor anyone else ever saw Mr. Johnson in possession of any weapon. No weapon was found in the area where Mr. Johnson was lying.

13. At the time defendant Shifflett shot Mr. Johnson, Mr. Johnson posed no threat to him or anyone else. Mr. Johnson was on the ground, weaponless, as defendant Shifflett and his police colleague advanced toward him. He was unknown to defendant Shifflett. Defendant Shifflett never asked Mr. Johnson to put his hands up. He never contended he had reason to believe that Mr. Johnson was armed. He never yelled "stop reaching" or the equivalent at Mr. Johnson before shooting him. After being shot, Mr. Johnson said "I had nothing." In his subsequent interview by Police Internal Affairs, defendant Shifflett admitted he did not see any objects in Mr. Johnson's hands, and that there were no aggravating factors in his foot pursuit, which he styled "pretty standard." Other officers with whom he was communicating by radio gave him no reason to think that Mr. Johnson presented a danger of violence, or that he had committed any crime other than the suspected larceny. What defendant Shifflett knew when he shot Mr. Johnson was that Mr. Johnson had stolen a pair of sunglasses of unknown value and had been running away from him.

14. Defendant Shifflett's shooting of Mr. Johnson was, and was found by the Fairfax County Police Department to have been, objectively unreasonable, in gross derogation of applicable police policies and long-settled constitutional principles under *Graham v. Connor,* 490 U.S. 386 (1989) and *Tennessee v. Garner,* 471 U.S. 1 (1985). As a consequence of his shooting Mr. Johnson, defendant Shifflett was fired by the police and subsequently prosecuted for involuntary manslaughter. Acquitted of that charge, he was convicted of reckless use of a

firearm in connection with the death of Mr. Johnson. The statute under which he was convicted requires proof of the handling of a firearm "in a manner so gross, wanton, and culpable as to show a reckless disregard for human life and causes the serious bodily injury of another person resulting in permanent and significant impairment." CODE OF VA. § 18.2-56.1(A1).

The Failure to Supervise Defendant Shifflett

15. Prior to defendant Shifflett's shooting Mr. Johnson, on at least three occasions during the prior 12 months alone – including one twelve days before he shot Mr. Johnson – he had prematurely drawn his gun on an unarmed person thought to have been engaged in a non-violent offense:

* On February 17, 2022, defendant Shifflett drew his gun on a man, believed to have stolen a pair of sunglasses, who had stopped running away from him. He did so because, as he stated in his report, "people who commit crimes are sometimes armed." The suspect was unarmed.

* On October 25, 2022, defendant Shifflett drew his gun on a man, who was running away from him and trying to discard an item of clothing it was believed he had stolen and secured in his waistband. Defendant Shifflett wrote in his report: "I removed my firearm and pointed it at him not knowing if he was armed or not." The suspect was unarmed.

* On February 10, 2023, defendant Shifflett drew his gun on a woman sitting in a car he deemed involved in a larceny scheme victimizing a Bloomingdale's store. In fact, as he wrote in his report, the woman "did not have any involvement in the Bloomingdale's larceny," and was released. The woman was unarmed.

16. Police General Order 540 provides, in §III, that any pointing of a firearm to gain control or compliance shall be investigated and documented by the on-duty supervisor and sent to the appropriate commander for review and thereafter to division or bureau commanders.

17. The reports of defendant Shifflett's inappropriate and premature recourse to his gun were known or should have been known to the Supervisory Defendants pursuant to General Order 540 and settled police protocol.[2]

18. The Supervisory Defendants knew, from defendant Shifflett's known and documented all-too-ready recourse to his gun in cases involving suspected non-violent offenses, all in the year prior to his killing Mr. Johnson, that he posed a clear and present danger to persons he confronted, rightly or wrongly, for alleged criminal activity. It is a commonplace that such confrontations are routinely fraught with danger and can lead to misguided split-second decisions that have disastrous consequences.

19. Given the Supervisory Defendants' awareness of defendant Shifflett's documented record of inappropriate firearm use and of the danger this posed to the public, at some time before defendant Shifflett shot Mr. Johnson they should have taken, but failed to take, supervisory action to cause him to undergo appropriate assessment for fitness of duty, or to

---

[2]*See* n. 1 at 3, *supra.*

secure additional training and monitoring, or to be subjected to appropriate discipline up to and including possible termination of duty.

20. The failure of the Supervisory Defendants to attend to the proper supervision of defendant Shifflett, with his known pattern of life-threatening brandishing of weapons at unarmed persons, manifested their deliberate indifference to his continuing to pose an unreasonable risk of severe, constitutionally cognizable, harm to others and possibly himself.

21. As a result of defendants' actions and inactions set forth above, Mr. Johnson was wrongfully shot and killed by defendant Shifflett.

### Causes of Action

### Count I: Defendant Shifflett

### Fourth Amendment Violation: Unreasonable Force

22. By his actions set forth at ¶¶5-14 above, defendant Shifflett violated Mr. Johnson's right to be free from unreasonable force, mandated by the Fourth Amendment of the Constitution.

### Count II: Defendant Shifflett

### Wrongful Death

23. By his actions set forth at ¶¶5-14 above, defendant Shifflett caused the wrongful death of Mr. Johnson, giving rise to a claim under CODE OF VA. §8.01-50 on behalf of his statutory beneficiaries.

### Count III: Supervisory Defendants[3]

### Fourth and Fourteenth Amendments Violation

24. By their actions and inactions set forth at ¶¶15-20 above, the Supervisory Defendants manifested deliberate indifference to defendant Shifflett's pattern of excessively aggressive recourse to his firearm, thereby posing an unreasonable risk of harm that ultimately caused the death of Mr. Johnson. In so doing, they violated their obligations under the Fourth and Fourteenth Amendments of the Constitution.

### Count IV: Supervisory Defendants

### Wrongful Death

21. By their actions set forth at ¶¶15-20 above, the Supervisory Defendants caused the wrongful death of Mr. Thompson, giving rise to a claim under CODE OF VA. §8.01-50 on behalf of his statutory beneficiaries.

### Count V: Alternative Count: Defendant Shifflett

### Gross Negligence

25. Should the evidence be found not to support a claim of intentional conduct by defendant Shifflett in killing Mr. Johnson, Ms. Johnson claims, in the alternative, that by his actions set forth in ¶¶5-14 above, defendant Shifflett engaged in grossly negligent conduct causing the death of Mr. Johnson.

---

[3]*See* n. 2 at 3, *supra.*

### Count VI: Alternative Count: Supervisory Defendants

### Gross Negligence

25. By their actions and failures to act set forth in ¶¶15-20 above, the Supervisory Defendants engaged in grossly negligent conduct causing the death of Mr. Johnson.

***

Wherefore, Ms. Johnson requests an order of this Court permitting immediate discovery of defendant Shifflett's supervisor prior to his killing of Mr. Johnson, and, in due course, an order granting her:

* Actual damages appropriate to the proof at trial, jointly and severally against all defendants,

* Punitive damages against each defendant appropriate to the proof at trial,

* Damages for Mr. Johnson's statutory beneficiaries under CODE OF VA. §80.1-50,

* Costs of suit, including reasonable attorney's fees, and

* Such other relief as is just.

Ms. Johnson requests trial by jury.

                                                    Respectfully submitted,

                                                    MELISSA JOHNSON, Personal Representative
                                                      of the Estate of the late Timothy Johnson,

                                                  By counsel

Dated:   February 20, 2025

Counsel for Plaintiff:

//s//  Victor M. Glasberg
Victor M. Glasberg, #16184
Abigail S. Grand, #100578
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com
agrand@robinhoodesq.com
JohnsonTimothy\Pleadings\2025-0220-AmendedComplaint

//s// Carl L. Crews
Carl  L. Crews, #42691
C. Lowell Crews, PLLC
2776 S. Arlington Mill Drive, #186
Arlington, VA 22206
703.542.4473 / Fax 703.997.8735
legal@attorneycarlcrews.com

Certificate of Service

I, Victor M. Glasberg, hereby certify that on this 20th day of February 2025, I electronically filed the foregoing Amended Complaint with the clerk of the court.

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com

Counsel for Plaintiff