IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **MELISSA JOHNSON**, Personal Representative : <br> of the Estate of the late Timothy Johnson : <br>       Plaintiff, : <br> : <br> v. : <br> : <br> : <br> **WESLEY SHIFFLETT, et al.,** : <br>       Defendants. : | Civil Action No. 1:25cv80 |

**MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendants Michael Conner, William Arnest, Robert Bauer, Matthew Lane, Jonathan Steier, Scott Colwell, Carolyn Kinney, Derek Grey, Wilson Lee, Tonny Kim, Robert Blakeley, and Kevin Davis (collectively referred to herein as "Supervisory Defendants"), by counsel, have moved this Court to dismiss the Complaint filed herein against them for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), and in support thereof state the following:

**BACKGROUND**

On February 20, 2025, the Plaintiff, Melissa Johnson, filed a Complaint alleging a federal 42 U.S.C. § 1983 claim and state law tort claims against the Supervisory Defendants associated with the February 22, 2023, shooting death of the Plaintiff's son, Timothy Johnson (Johnson) by former Fairfax County Police Officer Wesley Shifflett (Shifflett). (Am. Compl., ECF No. 15.) On February 22, 2023, Shifflett pursued Johnson, who had stolen sunglasses from the Nordstrom store in Tyson's Corner shopping center, and shot him in an undeveloped piece of land adjacent to the shopping center. (Doc. 15, ¶¶ 5-10).

With regard to the Plaintiff's claims against the Supervisory Defendants, the Amended Complaint alleges that these Defendants were "in supervisory capacities in relation to defendant Shifflett in the period January 2022-February 2023." (Am. Compl., ECF No. 15, ¶ 4.) During that time period, according to the Amended Complaint, Shifflett inappropriately drew his firearm while on duty on a total of three occasions: February 17, 2022, October 25, 2022, and February 10, 2023. *Id*. at ¶ 15. The Amended Complaint alleges that the Fairfax County Police Department's (FCPD) General Order (GO) 540 provides for investigation of instances of pointing of firearms by the "on-duty supervisor" and further review by "the appropriate commander" and "division or bureau commanders." (Am. Compl., ECF No. 15, ¶ 16.) The Amended Complaint further alleges that the Supervisory Defendants "knew or should have known of defendant Shifflett's repeated, reported and documented inappropriate recourse to his service weapon in the year preceding his killing Mr. Johnson." *Id*.

The Amended Complaint does not allege that any of the Supervisory Defendants were present during Johnson's February 22, 2023, shooting or during any of the three prior incidents wherein Shifflett drew his firearm, nor does the Plaintiff differentiate among the 12 Supervisory Defendants with regard to their purported involvement in this matter or the nature, extent, or timeframe of their supervisory authority over Shifflett. *See generally* Am. Compl., ECF No. 15. The Amended Complaint instead simply claims that the Supervisory Defendants knew of the prior firearms incidents and "should have taken, but failed to take, supervisory action" with regard to Shifflett. *Id*. at ¶ 19.

The Plaintiff's Amended Complaint sets out several claims against the Supervisory Defendants: a Section 1983 claim for purported violations of the Fourth and Fourteenth

Amendments (Count III), a state law wrongful death claim (Count IV), and a state law gross negligence claim (Count VI).

## ARGUMENT

### I. LEGAL STANDARD

A court should only grant a Rule 12(b)(6) motion where it "appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). The court must presume all "factual allegations in the complaint to be true and accord[ ] all reasonable inferences to the non-moving party." *Westmoreland v. Brown*, 883 F. Supp. 67, 70 (E.D. Va. 1995). The court, however, is not bound to accept as true "conclusory allegations regarding the legal effect of the facts alleged." *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Indeed, the "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of [liability]." *Young v. City of Mt. Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). Were this not the case, "Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint." *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1086 (4th Cir. 1979).

### II. COUNT III MUST BE DISMISSED FOR FAILURE TO STATE A SUPERVISORY LIABILITY CLAIM UNDER SECTION 1983.

Count III of the Amended Complaint asserts a Section 1983 claim against the Supervisory Defendants for a purported violation of Johnson's Fourth and Fourteenth Amendment rights. This claim must be dismissed due to the Plaintiff's failure to state a claim

for supervisory liability pursuant to Section 1983, and because the Supervisory Defendants are entitled to qualified immunity.

### A. Failure to State a Supervisory Liability Claim.

While it is well-settled that supervisors may under certain circumstances be held liable for the actions of their subordinates, "the term 'supervisory liability' is a misnomer" because supervisors cannot incur Section 1983 liability under a *respondeat superior* theory of liability but can only be liable for their own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "'Supervisory' liability exists only to address those cases in which a supervising authority's 'indifference or tacit authorization of subordinates' misconduct may be a causative factor' in constitutional harm suffered at the hand of those subordinates." *Johnson v. Baltimore Police Dep't*, 452 F. Supp. 3d 283, 304 (D. Md. 2020) *quoting Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984).

In order to properly set out a Section 1983 claim for supervisory liability, a plaintiff must plead

> (1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) *quoting Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "[T]he first two elements of supervisory liability are intertwined," and thus are analyzed together. *Johnson*, 452 F. Supp. 3d at 304-05 *citing Shaw*, 13 F.3d at 799 n. 12.

4

With regard to the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins*, 751 F.3d at 226 *citing Shaw*, 13 F.3d at 799. Deliberate indifference as referenced in the second element "entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Fourth Circuit has opined that the plaintiff's burden to establish deliberate indifference is "heavy," and requires the plaintiff to point to more than just "a single incident or isolated incidents" to establish such liability. *Slakan*, 737 F.2d at 373. A plaintiff may only establish deliberate indifference through proof of "[a] supervisor's continued inaction in the face of documented widespread abuses." *Id.*

With regard to the third element, in cases such as the case at bar where there are no allegations of direct causation (i.e., where a policy commands the violation), the successful plaintiff must "demonstrate causation according to 'the tort principle that holds a person liable for the natural consequences of his actions.'" *Johnson*, 452 F. Supp. 3d at 306 *quoting Shaw*, 13 F.3d at 799. *See also Carter v. Tatum*, 3:23CV239, 2023 WL 6797494, *3 (E.D. Va. Oct. 13, 2023) ("With regard to the third causation element, supervisors must have 'direct culpability' in causing the plaintiff's injuries.") *citing McWilliams v. Fairfax Cnty. Bd. of Sup's*, 72 F.3d 1191, 1197 (4th Cir. 1996).

Courts in the Fourth Circuit have repeatedly analyzed the sufficiency of complaints to determine whether the plaintiff has properly set out a supervisory liability claim. In *Moody v. City of Newport News, Va.*, 93 F. Supp. 3d 516 (E.D. Va. 2015), the court considered a

5

supervisory liability claim in the context of an officer-involved shooting. There, the plaintiff's supervisory liability allegations were similar to the Plaintiff's claims herein: that the supervisory defendants "failed to supervise . . . deputies in the appropriate constitutional limits on the use of force, knowing that these members of law enforcement therefore pose a significant risk of injury to the public" and that they "failed to properly . . . supervise [their] officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff." *Id*. at 541. The court dismissed the plaintiff's supervisory liability claim on a motion to dismiss, holding that the plaintiff had failed to establish the knowledge element of the liability test because "those allegations are conclusory, and insufficient, without more, to raise, beyond the speculative level, Plaintiff's right to relief" because the allegations were "naked assertion[s] devoid of further factual enhancement." *Id*. quoting *Iqbal*, 556 U.S. at 678. *See also Green v. Lilly*, 7:23CV151, 2023 WL 6564907, *8 (W.D. Va. Oct. 10, 2023) (finding that "general allegations that" the defendant supervisor "knew or should have known about the unconstitutional conduct" of their employees was insufficient to state a claim).

More recently, in *Carter*, 2023 WL 6797494, the court dismissed a supervisory liability claim against a prison warden despite the complaint alleging that the warden had constructive knowledge of violence inside the prison based upon published news reports of injuries occurring inside the facility. *Id*. at *5. According to the court, because the complaint did not allege that the defendant warden was named or quoted in the articles, it failed to properly plead his actual or constructive knowledge of the events that had occurred within his facility. *Id*. Furthermore, the plaintiff's failure to plead facts establishing the warden's knowledge also "preclude[d] finding that Plaintiff sufficiently alleged deliberate indifference." *Id*. Finally, the court held that the plaintiff had failed to properly allege causation because the complaint only alleged that the

warden "exercise[d] authority, directions and control over" the prison facility. *Id*. The court reasoned that because the plaintiff failed to include "supplemental information about [the warden]'s specific duties . . . and their connection to Plaintiff's particular injury, the allegation collapse[d] into a simple identification of [him] as the prison's warden." *Id*.

Here, the Plaintiff's Amended Complaint is insufficient as a matter of law to allege supervisory liability as to any of the Supervisory Defendants. The Amended Complaint lumps all of the Supervisory Defendants into one group and lacks factual enhancement as to their respective ranks or job duties, the factual basis for their purported knowledge of Shifflett's alleged prior firearm use, or their ability or authority to address that alleged behavior. Simply alleging that the Supervisory Defendants were "in supervisory capacities" and that they "knew or should have known" of Shifflett's actions is precisely the type of "naked assertion[s] devoid of further factual enhancement" that are insufficient as a matter of law. As in *Carter*, the Plaintiff's allegations fail to accomplish anything more than identifying these defendants as supervisory employees of the FCPD. As such, Count III must be dismissed.

**B.  The Supervisory Defendants Are Entitled to Qualified Immunity.**

Count III must also be dismissed because the Supervisory Defendants are entitled to qualified immunity as to the Plaintiff's Section 1983 claim. Government officials engaged in the exercise of discretionary functions, being sued in their individual capacities, are entitled to the defense of qualified immunity. *Butz v. Economou*, 438 U.S. 478, 479 (1978). In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the U.S. Supreme Court held that government officials are immune from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the conduct. "Officials have qualified immunity either if the facts do not make out a violation of a constitutional right or

if the right was not clearly established at the time." *Snider v. Seung Lee*, 584 F.3d 193, 198 (4th Cir. 2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815-16, 818-19 (2009)). "In other words, courts ask 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Gandy v. Robey*, 520 F. App'x 134, 140 (4th Cir. 2013) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). *See also Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[A]lthough the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Beasley v. Brown*, 3:12CV00006, 2013 WL 1288030, *6 (E.D. Va. Mar. 27, 2013) (quoting *Wilson v. Layne*, 141 F.3d 111, 113 (4th Cir. 1998). The Fourth Circuit Court of Appeals has recently reaffirmed that law enforcement officers "are entitled to qualified immunity *unless* existing precedent 'squarely governs' the specific facts at issue." *Rambert v. City of Greenville*, 107 F.4th 388, 406 (4th Cir. 2024) *citing Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

      In *Gunsay v. Mozayeni*, 695 F. App'x 696 (4th Cir. 2017), the Fourth Circuit granted qualified immunity to law enforcement officers accused of pointing their firearms due to a lack of firmly established law that would put the officers on notice that this behavior could violate the plaintiffs' constitutional rights. There, law enforcement officers received a tip as to the whereabouts of the two plaintiffs, a mother and her adult daughter, and took the mother into custody on outstanding arrest warrants for custodial interference and evading arrest. *Id*. at 698. According to the complaint, multiple officers approached the plaintiffs' vehicle with their guns drawn and took the mother into custody. *Id*. The officers also directed the daughter to exit the vehicle at gunpoint, even though she was cooperative and not suspected of committing a crime. *Id*.

8

On appeal, the Fourth Circuit upheld the district court's grant of qualified immunity to the officers as to both plaintiffs' claims. *Id*. at 701-02.[1] With regard to the mother's claim for excessive force, the court "assume[d] that the officers at the scene approached [the] car with their guns drawn and pointed at [the plaintiff], removed [her] from the car, forced her to the ground, and arrested her pursuant to two outstanding felony warrants . . ." *Id*. at 701. Without deciding whether those actions violated the Fourth Amendment, the Fourth Circuit held that the officers were entitled to qualified immunity due to of the plaintiff's failure to identify any authority "clearly establishing that, at the time of the incident, the officers' actions violated the Fourth Amendment." *Id*. As to the daughter's claim associated with the officers' pointing of firearms at her, the Court stated that "even assuming the unnamed officers' conduct violated the Fourth Amendment – again, a question that we need not, and thus do not, address," the defendants were entitled to qualified immunity due to the same absence of any authority that would have put them on notice that pointing their firearms at an individual not suspected of committing a crime violated the Fourth Amendment. *Id*. at 703.

Indeed, it was not firmly established until 2024 that a law enforcement officer's pointing of their firearm during a forced police encounter could potentially violate the Fourth Amendment. *Nazario v. Gutierrez*, 103 F.4th 213 (4th Cir. 2024). In *Nazario* the Fourth Circuit considered whether a plaintiff had adequately established that two law enforcement officers who

---

[1] The district court dismissed the mother's claims on a motion to dismiss but denied the officers' motion to dismiss as to the daughter's claim for unlawful seizure, finding that they were not entitled to qualified immunity in part because there was "no justification for [the officers] to point weapons at [her]." *Id*. at 700. After discovery, the plaintiffs conceded that the defendant officers had not pointed firearms at the daughter, but they argued at summary judgment that the defendant officers were liable on a bystander liability theory because they were present when other officers pointed their firearms at her. *Id*. at 701-02. At summary judgment the district court granted qualified immunity as to the daughter's claim. *Id*. at 700.

pointed their firearms at the plaintiff to remove him from his vehicle during a traffic stop had unlawfully seized the plaintiff. *Id*. at 220. There, the evidence adduced during discovery established that the defendant officers conducted a traffic stop of the plaintiff's vehicle because it lacked a clearly visible rear license plate as required by Va. Code § 46.2-113. *Id*. The plaintiff drove approximately one mile after the initiation of the traffic stop before pulling over into a gas station parking lot. *Id*. Both officers approached the plaintiff's vehicle with their firearms drawn and pointed them at the plaintiff. *Id*. The primary officer articulated that he took this action because he was suspicious that a felony could be occurring and because "he had to prepare for the possibility that there were other people in the vehicle, or that the driver was preparing" to kill him. *Id*. In the process of having the plaintiff exit his vehicle at gunpoint, the officers made what the Fourth Circuit characterized as "death threats" to the plaintiff, telling him that he was "fixing to ride the lightening," which the Court characterized as "a colloquial reference to death by the electric chair." *Id*. at 232. In response to the plaintiff stating that he was afraid to get out of his vehicle, one officer stated that he "should be" afraid, confirming to the plaintiff, according to the court, that his life was in danger during the interaction. *Id*.

The plaintiff brought a claim for unlawful seizure against both officers, contending that the officers' use of firearms and death threats unlawfully prolonged the traffic stop in violation of *Rodriguez v. United States*, 575 U.S. 348 (2015), which prohibits law enforcement officers from prolonging a routine traffic stop beyond the action necessary to issue a traffic summons. In adjudicating the plaintiff's claim, the Fourth Circuit considered whether the pointing of firearms could constitute a Fourth Amendment violation. *Id.* at 232. In its analysis, the court recognized that the issue of whether the pointing of firearms could constitute a Fourth Amendment violation had not previously been decided, stating "[o]ur Court has not addressed whether or when the

simple act of a police officer pointing firearms at a person during a traffic stop is unconstitutional." *Id*. at 233.  This was particularly significant given the Fourth Circuit's well-established precedent that provides that "officers performing a lawful stop are authorized to take such steps as are reasonably necessary to protect their personal safety." *Id. citing United States v. Soriano-Jarquin*, 492 F.3d 495, 500 (4th Cir. 2007).  This prior precedent, according to the court, would not have made it obvious to the defendant officers that they could not point their firearms at the plaintiff during his traffic stop.  *Id*.  After a review of this prior precedent, the Court held that "although we may not have heretofore adopted the principle – we are satisfied that it can be unconstitutional to hold a person at prolonged gunpoint when he is compliant and presents no danger to the public or law enforcement officers." *Id*. at 232.[2]

Therefore, it was not firmly established in the Fourth Circuit prior to 2024 that a law enforcement officer could violate an individual's constitutional rights by pointing his firearm at that individual.  As such, the Supervisory Defendants could not be on notice that Shifflett's pointing of his firearm in 2022 and 2023 could have violated anyone's constitutional rights.  They are thus entitled to qualified immunity as to any such claim and Count III must be dismissed with prejudice.[3]

---

[2] The *Nazario* court ultimately concluded that the defendant officers were not entitled to qualified immunity on the plaintiff's unlawful seizure claim even absent firmly established authority as to firearm pointing because the officers unlawfully prolonged the plaintiff's traffic stop by making death threats against him.  *Id*. at 233 ("it is obvious that [officers] should not prolong [a] stop by making unwarranted death threats").

[3] The Supervisory Defendants' entitlement to qualified immunity on any claim stemming from Shifflett's prior acts of pointing his firearm should preclude the Plaintiff from receiving leave to amend her Section 1983 claim.  *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).


### III. COUNTS IV AND VI MUST BE DISMISSED BECAUSE VIRGINIA DOES NOT RECOGNIZE A CAUSE OF ACTION FOR NEGLIGENT SUPERVISION.

The Plaintiff's state law claims against the Supervisory Defendants for wrongful death and gross negligence must be dismissed because an independent cause of action for negligent supervision does not exist in the Commonwealth of Virginia.[4] *See Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 235 Va. 55 (1988); *Hernandez* v. *Lowe's Home Ctrs., Inc.*, 83 Va. Cir. 210, 212 (2011) (citing cases); *Williams* v. *Dowell,* 34 Va. Cir. 240, 243 (1994); *Gray v. Rhoads*, 55 Va. Cir. 362 (2001).

In *Williamson v. Old Brogue Inc.*, 232 Va. 350, 353 (1986), the Virginia Supreme Court stated, "the courts in Virginia operate under a statutory mandate which provides that the common laws of England, if not repugnant to the Bill of Rights or the Virginia Constitution, continue to be in full force and effect within the State, and shall be 'the rule of decision, except as altered by the General Assembly.'" (citing Va. Code § 1-10). Causes of action for negligent supervision are not recognized at common law, nor are such causes of action provided for by statute. The Virginia Supreme Court recently affirmed this principle in *A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 630 (2019) ("In Virginia, there is no duty of reasonable care imposed upon an employer in the supervision of its employees . . . and we will not create one here.") *citing Dowdy*, 235 Va. at 61.

Similarly, federal courts have consistently rejected negligent failure to supervise claims brought under Virginia law. *See Harris v. Rosemeier,* No. 7:22CV00582, 2024 WL 646389, at

---

[4] Virginia's wrongful death statute, Va. Code § 8.01-50, does not create a cause of action, it simply creates a right of action for a deceased individual's personal representative to bring a claim for personal injury arising out of the individual's death. *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991). As such, the Plaintiff's claim in Count IV should be construed as a claim for negligence. *See Simpson v. Commonwealth of Virginia*, 1:16CV162, 2016 WL 3923887, *4 n. 2 (E.D. Va. Jul. 21, 2016).

*4 (W.D. Va. Feb. 15, 2024) (dismissing a state law failure to supervise claim against a sheriff for the alleged use of excessive force by his deputy). *See also Crawford v. Move Freight Trucking, LLC*, No. 7:23CV433, 2024 WL 762377, at *3 (W.D. Va. Feb. 20, 2024) ("Virginia law does not recognize independent tort claims for negligent supervision"); *Brown v. Wal-Mart Stores E., LP*, No. 3:23CV530, 2023 WL 8357970, at *3 (E.D. Va. Dec. 1, 2023) ("Virginia courts have declined to recognize the distinct tort of negligent supervision."); *Hicks v. City of Lynchburg*, No. 6:21CV00043, 2022 WL 1750468, at *2-3 (W.D. Va. May 31, 2022) ("Virginia law does not recognize a negligent supervision claim."); *Johnson v. McCowan*, 549 F. Supp. 3d 469, 475 (W.D. Va. 2021) (dismissing a failure to supervise claim because "the Supreme Court of Virginia has held that Virginia does not recognize a cause of action for negligent supervision"); *Warner v. Centra Health Inc.*, 503 F. Supp. 3d 479, 500 (W.D. Va. 2020); *Morgan v. Wal-Mart Stores E. LP.*, No. 3:10CV669, 2010 WL 4394096, at *4 (E.D. Va. Nov. 1, 2010) ("Defendant argues that negligent supervision is not a recognized cause of action in Virginia.  The Court agrees.").

Here, the Plaintiff does not allege that any of the Supervisory Defendants were present when Johnson was shot.  The Plaintiff's allegations against the Supervisory Defendants are confined to the claim that they failed to adequately supervise Shifflett after instances wherein he allegedly improperly pointed his firearm at other individuals.  Because Virginia does not recognize a state law cause of action based upon negligent supervision, there is no legal basis upon which the Supervisory Defendants could be liable to the Plaintiff under a state law tort claim, and as such, Counts IV and VI must be dismissed with prejudice.

## **CONCLUSION**

In consideration of the foregoing, the Supervisory Defendants request that the Court dismiss Counts III, IV, and VI of the Amended Complaint against them.

          Respectfully submitted,

          **MICHAEL CONNER, WILLIAM ARNEST, ROBERT BAUER, MATTHEW LANE, JONATHAN STEIER, SCOTT COLWELL, CAROLYN KINNEY, DEREK GREY, WILSON LEE, TONNY KIM, ROBERT BLAKELEY and KEVIN DAVIS**

**ELIZABETH D. TEARE**
**COUNTY ATTORNEY**

**By:** _____/s/_____
      **Kimberly P. Baucom, Esquire**
      **Deputy County Attorney**
      Virginia State Bar No. 44419
      **Jamie M. Greenzweig, Esquire**
      **Senior Assistant County Attorney**
      Virginia State Bar No. 75066
      12000 Government Center Parkway
      Suite 549
      Fairfax, VA   22035-0064
      (703) 324-2421
      (703) 324-2665 fax
      kimberly.baucom@fairfaxcounty.gov
      jamie.greenzweig@fairfaxcounty.gov
      *Counsel for Michael Conner, William Arnest, Robert Bauer, Matthew Lane, Jonathan Steier, Scott Colwell, Carolyn Kinney, Derek Grey, Wilson Lee, Tonny Kim, Robert Blakeley, and Kevin Davis*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 19th day of March, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a true copy of the foregoing to the following:

Victor M. Glasberg, Esquire
Abigail S. Grand, Esquire
121 S. Columbus Street
Alexandria, Virginia 22314
vmg@robinhoodesq.com
agrand@robinhoodesq.com
Counsel for Plaintiff

Carl L. Crews, Esquire
2776 S. Arlington Mill Drive, #186
Arlington, Virginia 22206
legal@attorneycarlcrews.com
Counsel for Plaintiff

Heather K. Bardot, Esquire
9990 Fairfax Boulevard
Suite 400
Fairfax, Virginia 22030
hbardot@mbbtklaw.com
Counsel for Defendant Wesley Shifflett

                                                          /s/
                                        Kimberly P. Baucom