IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **MELISSA JOHNSON**, Personal Representative of the Estate of the late Timothy Johnson       Plaintiff, | : <br> : <br> : <br> : |
| v. | :     Civil Action No. 1:25cv80 <br> : <br> : |
| **WESLEY SHIFFLETT, et al.,**       Defendants. | : <br> : |

**MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendants William Arnest (Arnest), Scott Colwell (Colwell), and Wilson Lee (Lee) (collectively referred to herein as "Supervisory Defendants"), by counsel, have moved this Court to dismiss the Complaint filed herein against them for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), and in support thereof state the following:

### BACKGROUND

This matter is before the Court after the Plaintiff filed her Second Amended Complaint (Complaint) on June 26, 2025. As to the Supervisory Defendants, the Complaint alleges a federal 42 U.S.C. § 1983 claim in Count III associated with the February 22, 2023, shooting death of the Plaintiff's son, Timothy Johnson (Johnson) by former Fairfax County Police Officer Wesley Shifflett (Shifflett). (ECF No. 56.) On February 22, 2023, Shifflett pursued Johnson, who had stolen sunglasses from the Nordstrom store in Tyson's Corner shopping center and ultimately shot him in an undeveloped piece of land adjacent to the shopping center. *Id.* at ¶¶ 5-10.

With regard to the Plaintiff's claim against the Supervisory Defendants, the Complaint alleges that they were each "in supervisory capacities in relation to defendant Shifflett in the

period January 2022-February 2023." *Id*. at ¶ 4. Specifically, the Complaint alleges that Arnest was a second lieutenant and Shifflett's direct supervisor at the Fairfax County Police Department's (FCPD) McLean District Station from December 2021 until February 2023.[1] *Id*. Colwell was a first lieutenant and the assistant commander of the McLean District Station from August 2021 to September 2022. *Id*. Lee was the commander of the McLean District Station, at the rank of captain, from August 2021 to January 2023. *Id*.

The Complaint outlines three occasions during the period from January 2022-February 2023 wherein Shifflett purportedly inappropriately drew his firearm while on duty: February 17, 2022, October 25, 2022, and February 10, 2023. *Id*. at ¶ 16. The Plaintiff alleges that during the February 17, 2022, incident, Shifflett pointed his firearm at a theft suspect who engaged him in a foot pursuit "across a busy four-lane boulevard and into the parking lot of a local diner." *Id*. at ¶ 16(a). Shifflett drew his firearm and pointed it at the suspect after the suspect stopped running in order to provide commands for the suspect to get on the ground to be taken into custody. *Id*. According to the Complaint, during the October 25, 2022, incident, Shifflett pointed his firearm at a fleeing shoplifting suspect when he observed the man reaching towards his waistband, and again to accomplish the man's arrest after he stopped fleeing. *Id*. at ¶ 16(b). Finally, the Complaint alleges that Shifflett drew his firearm on February 10, 2023, on a woman inside a vehicle during a traffic stop of the vehicle, which was "suspected to be involved in a larceny scheme victimizing a Bloomingdale's store." *Id*. at ¶ 16(c).

---

[1] The Complaint contains various spellings for the McLean District Station, but the proper spelling is "McLean" and will be used herein.

The Complaint alleges that there were two versions of FCPD General Order (GO) 540 in effect with regard to firearm pointing during the period between February 2022 and February 2023 which provided guidance for officers when pointing their firearms and provided a process by which those incidents are reviewed by supervisors.[2]  *Id*. at ¶ 17-18.

According to the Complaint, Arnest was Shifflett's first-line supervisor during all three of his prior firearm pointing incidents, and he reviewed and approved Shifflett's reports for each incident, finding all three to be in compliance with FCPD policy.[3]  *Id*. at ¶ 23-25.  The Complaint alleges that Colwell was only within Shifflett's chain of supervision during the February 17, 2022, incident, and that he reviewed that incident and found Shifflett to be in compliance with FCPD policy as well.  *Id*. at ¶¶ 4, 33, 35.  The Complaint alleges that Lee was only within Shifflett's chain of supervision for the February 17, 2022, and October 25, 2022, firearm pointing incidents, and that he reviewed Arnest's conclusion that Shifflett had acted within policy during those incidents and "summarily and inappropriately" approved Arnest's findings in violation of FCPD policy.  *Id*. at ¶¶ 4, 29-30.  The Complaint alleges that with regard to the

---

[2] In the Complaint, the Plaintiff improperly relies on FCPD's use of force policies in a futile effort to support her supervisory liability claims.  Allegations regarding the FCPD's use of force policy are irrelevant, particularly the policy that was in effect during the February 2022 incident, which stated "[o]fficers should never point a firearm at someone unless they are ready to shoot that person" and "[f]irearms (loaded or unloaded) shall not be aimed at any person except as necessary in the line of duty."  (Compl. ¶ 17.)  This policy is more restrictive than Fourth Circuit authority, and it cannot set the standard for law enforcement action in a Section 1983 case.  *See Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (finding that a prison official's failure to follow internal policies was "not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation"); *Abney v. Coe*, 493 F.3d 412, 419 (4th Cir. 2007) (finding that it is "settled law that a violation of departmental policy does not equate with constitutional unreasonableness).

[3] The Complaint alleges that Arnest was also present during the February 10, 2023, incident and personally observed Shifflett's actions on that day.

3

February 2022 and February 2023 incidents, Arnest misrepresented Shifflett's actions in his review, and that during their review of the February 2022 incident, both Colwell and Lee "summarily" approved Arnest's conclusion that Shifflett had acted within policy. *Id*. at ¶¶ 23, 29.[4]

Finally, the Complaint alleges that each of the Supervisory Defendants had the authority while within Shifflett's chain of command to review his performance with the FCPD, and that they all had the responsibility to identify deficiencies in that performance and impose remedial or disciplinary measures to correct any such deficiencies. *Id*. at ¶¶ 20-22, 27-28, 34.[5]

## ARGUMENT

### I. LEGAL STANDARD

A court should only grant a Rule 12(b)(6) motion where it "appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). The court must presume all "factual allegations in the complaint to be true and accord[ ] all reasonable inferences to the non-moving party." *Westmoreland v. Brown*, 883 F. Supp. 67, 70 (E.D. Va. 1995).

---

[4] Specifically, the Complaint alleges that Arnest stated with regard to the February 2022 incident that Shifflett had pointed his firearm while "19-21" feet from the suspect, but that Shifflett was actually standing over the suspect at one point with his firearm directed at the suspect. Regarding the February 2023 incident, the Complaint alleges that Arnest concluded that it was "possible" that Shifflett had pointed his firearm during his encounter with the passenger of the motor vehicle, but that video evidence establishes that he did in fact point his firearm. *Id*. at ¶¶ 23, 25.

[5] The Complaint also contains the same conclusory language that this Court previously held insufficient to support the Plaintiff's claims. *See* Doc. 56, ¶ 38-41.

## II.   COUNT III OF THE COMPLAINT MUST BE DISMISSED BECAUSE THE SUPERVISORY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

The Plaintiff's supervisory liability claim must be dismissed because the Supervisory Defendants are entitled to qualified immunity. Government officials engaged in the exercise of discretionary functions, being sued in their individual capacities, are entitled to the defense of qualified immunity. *Butz v. Economou*, 438 U.S. 478, 479 (1978). In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the U.S. Supreme Court held that government officials are immune from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the conduct. "Officials have qualified immunity either if the facts do not make out a violation of a constitutional right or if the right was not clearly established at the time." *Snider v. Seung Lee*, 584 F.3d 193, 198 (4th Cir. 2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815-16, 818-19 (2009)). "[A]lthough the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Beasley v. Brown*, 3:12CV00006, 2013 WL 1288030, *6 (E.D. Va. Mar. 27, 2013) (quoting *Wilson v. Layne*, 141 F.3d 111, 113 (4th Cir. 1998). Law enforcement officers "are entitled to qualified immunity *unless* existing precedent 'squarely governs' the specific facts at issue." *Rambert v. City of Greenville*, 107 F.4th 388, 406 (4th Cir. 2024) *citing Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

When applied to a supervisory liability claim, the qualified immunity analysis becomes two-fold. *Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir. 1994).

> Because of the nature of § 1983 supervisory liability, the plaintiffs must make several separate showings to demonstrate that [the supervisor] lack[s] qualified immunity: (1) it was 'clearly established' at the time of [the subordinate's] conduct that [the

> supervisor] could be held liable under § 1983 for constitutional violations committed by [the subordinate]; (2) it was 'clearly established' at the time [the supervisor] was supervising [the subordinate] that the degree of force that [the supervisor] knew that [the subordinate] was using . . . was unconstitutional; (3) a reasonable person in [the supervisor's] position would have known that his actions were unlawful.

*Id. See also Turner v. Thomas*, 313 F. Supp. 3d 704, 715 (W.D. Va. 2018). As to the first prong, supervisory liability for the acts of subordinate employees was firmly established in *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), in 1984. *Shaw*, 13 F.3d at 802.

With regard to the second prong of the qualified immunity test, the Court must define the right at issue "in light of the specific context of the case, not as a broad general proposition." *Younger v. Crowder*, 79 F.4th 373, 385 (4th Cir. 2023). As applied to this case, the relevant qualified immunity question thus becomes whether it was firmly established in February 2022 – February 2023 that a law enforcement officer could not point his firearm at a criminal suspect who is either fleeing from officers or who is in a vehicle during an investigatory stop. *Id*.

In *Gunsay v. Mozayeni*, 695 F. App'x 696 (4th Cir. 2017), the Fourth Circuit granted qualified immunity to law enforcement officers accused of pointing their firearms due to a lack of firmly established law that would put the officers on notice that this behavior could violate the plaintiffs' constitutional rights. There, law enforcement officers received a tip as to the whereabouts of the two plaintiffs, a mother and her adult daughter, and took the mother into custody on outstanding arrest warrants for custodial interference and evading arrest. *Id*. at 698. According to the complaint, multiple officers approached the plaintiffs' vehicle with their guns drawn and took the mother into custody. *Id*. The officers also directed the daughter to exit the vehicle at gunpoint, even though she was cooperative and not suspected of committing a crime. *Id*.

6

On appeal, the Fourth Circuit upheld the district court's grant of qualified immunity to the officers as to both plaintiffs' claims. *Id*. at 701-02. With regard to the mother's claim for excessive force, the court "assume[d] that the officers at the scene approached [the] car with their guns drawn and pointed at [the plaintiff], removed [her] from the car, forced her to the ground, and arrested her pursuant to two outstanding felony warrants . . ." *Id*. at 701. Without deciding whether those actions violated the Fourth Amendment, the Fourth Circuit held that the officers were entitled to qualified immunity due to of the plaintiff's failure to identify any authority "clearly establishing that, at the time of the incident, the officers' actions violated the Fourth Amendment." *Id*. As to the daughter's claim associated with the officers' pointing of firearms at her, the Court stated that "even assuming the unnamed officers' conduct violated the Fourth Amendment – again, a question that we need not, and thus do not, address," the defendants were entitled to qualified immunity due to the same absence of any authority that would have put them on notice that pointing their firearms at an individual not suspected of committing a crime violated the Fourth Amendment. *Id*. at 703.

Indeed, it was not firmly established in the Fourth Circuit until 2024 that a law enforcement officer's pointing of their firearm could potentially violate the Fourth Amendment. *Nazario v. Gutierrez*, 103 F.4th 213 (4th Cir. 2024). In *Nazario* the Fourth Circuit considered whether a plaintiff had adequately established that two law enforcement officers who pointed their firearms at the plaintiff to remove him from his vehicle during a traffic stop had unlawfully seized the plaintiff. *Id*. at 220. There, the evidence established that the defendant officers conducted a traffic stop of the plaintiff's vehicle because it lacked a clearly visible rear license plate as required by Virginia Code § 46.2-113. *Id*. The plaintiff drove approximately one mile

7

after the initiation of the traffic stop before pulling over into a gas station parking lot. *Id.* Both officers approached the plaintiff's vehicle with their firearms drawn and pointed them at the plaintiff. *Id.* The primary officer articulated that he took this action because he was suspicious that a felony could be occurring and because "he had to prepare for the possibility that there were other people in the vehicle, or that the driver was preparing" to kill him. *Id.* In the process of having the plaintiff exit his vehicle at gunpoint, the officers made what the Fourth Circuit characterized as "death threats" to the plaintiff, telling him that he was "fixing to ride the lightning," which the Court characterized as "a colloquial reference to death by the electric chair." *Id.* at 232. In response to the plaintiff stating that he was afraid to get out of his vehicle, one officer stated that he "should be" afraid, confirming to the plaintiff, according to the court, that his life was in danger during the interaction. *Id.*

The plaintiff brought a claim for unlawful seizure against both officers, contending that the officers' use of firearms and death threats unlawfully prolonged the traffic stop in violation of *Rodriguez v. United States*, 575 U.S. 348 (2015), which prohibits law enforcement officers from prolonging a routine traffic stop beyond the action necessary to issue a traffic summons. In adjudicating the plaintiff's claim, the Fourth Circuit considered whether the pointing of firearms could constitute a Fourth Amendment violation. *Nazario*, 103 F.4th at 232. In its analysis, the court recognized that the issue of whether the pointing of firearms could constitute a Fourth Amendment violation had not previously been decided, stating "[o]ur Court has not addressed whether or when the simple act of a police officer pointing firearms at a person during a traffic stop is unconstitutional." *Id.* at 233. This was particularly significant given the Fourth Circuit's well-established precedent that provides that "officers performing a lawful stop are authorized to

8

take such steps as are reasonably necessary to protect their personal safety." *Id*. *citing United States v. Soriano-Jarquin*, 492 F.3d 495, 500 (4th Cir. 2007). This prior precedent, according to the court, would not have made it obvious to the defendant officers that they could not point their firearms at the plaintiff during his traffic stop. *Id*. After a review of this prior precedent, the Court held that "although we may not have heretofore adopted the principle – we are satisfied that it can be unconstitutional to hold a person at prolonged gunpoint when he is compliant and presents no danger to the public or law enforcement officers." *Id*. at 232.[6]

      Therefore, it was not firmly established in the Fourth Circuit prior to 2024 that a law enforcement officer could violate an individual's constitutional rights by pointing his firearm at that individual. Furthermore, even after *Nazario*, the only right that is firmly established in the Fourth Circuit with regard to officers pointing their firearms is that officers cannot point their firearms at compliant subjects who present no danger. *Id*. at 232. As such, Shifflett cannot be said to have violated a firmly established right with regard to any of his 2022 or 2023 firearm pointing incidents, and the Supervisory Defendants could not have been on notice that Shifflett's behavior could violate the constitution. They are thus entitled to qualified immunity as to any such claim and Count III of the Complaint must be dismissed with prejudice.

---

[6] The *Nazario* court ultimately concluded that the defendant officers were not entitled to qualified immunity on the plaintiff's unlawful seizure claim even absent firmly established authority as to firearm pointing because the officers unlawfully prolonged the plaintiff's traffic stop by making death threats against him. *Id*. at 233 ("it is obvious that [officers] should not prolong [a] stop by making unwarranted death threats").

### III.   COUNT III MUST BE DISMISSED FOR FAILURE TO STATE A SUPERVISORY LIABILITY CLAIM UNDER SECTION 1983.

Count III of the Complaint must also be dismissed because the Plaintiff has failed to state a claim for supervisory liability under § 1983.  While it is well-settled that supervisors may under certain circumstances be held liable for the actions of their subordinates, "the term 'supervisory liability' is a misnomer" because supervisors cannot incur Section 1983 liability under a *respondeat superior* theory of liability but can only be liable for their own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  "'Supervisory' liability exists only to address those cases in which a supervising authority's 'indifference or tacit authorization of subordinates' misconduct may be a causative factor' in constitutional harm suffered at the hand of those subordinates." *Johnson v. Baltimore Police Dep't*, 452 F. Supp. 3d 283, 304 (D. Md. 2020) *quoting Slakan*, 737 F.2d at 372-73.

In order to properly set out a Section 1983 claim for supervisory liability, a plaintiff must plead

> (1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and
> (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) *quoting Shaw*, 13 F.3d at 799.

With regard to the first element, Fourth Circuit precedent commands that the prior conduct of the subordinate must be unconstitutional before supervisory liability will attach.  In *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188 (4th Cir. 2002), the Fourth Circuit

10

considered the issue of supervisory liability in an appeal of a jury verdict against multiple law enforcement officers, including one supervisory officer. *Id*. at 200.  There, the Plaintiffs were detained at a police station in connection with a murder investigation and held "for up to nine hours" after the arrest of the murder suspect. *Id*.  The supervisory officer was found liable to the plaintiffs based upon evidence presented at trial that "it [was] the customary practice of the County Police to hold witnesses until the lead investigator or his supervisor authorized their release." *Id*. at 206.  On appeal, the Fourth Circuit reversed the jury verdict against the supervisory officer, finding there was no evidence that witnesses in prior instances were held unconstitutionally "against their will and without probable cause." *Id*. at 202.  Thus, the plaintiffs' failure to establish that the prior conduct of the subordinates was unconstitutional was fatal to their claims against the supervisor. *Id*. at 207.  *See also Johnson v. Robinette*, 105 F.4th 99, 124 (4th Cir. 2024) (affirming the grant of summary judgment to a supervisor because of the plaintiff's failure to "forecast evidence sufficient to prove [the supervisor] knew or should have known that [their subordinate] was engaged in unconstitutional acts").

In this case, the Plaintiff relies on three prior incidents in which Shifflett allegedly pointed his firearm at criminal suspects.  Notably, according to the Complaint, one of those incidents involved Shifflett pointing his firearm at a fleeing criminal suspect as he was reaching toward his waistband.  Furtive movement of this nature is a classic indicia of threatening behavior in which the officer could reasonably fear that the suspect was about to pull a gun from a waistband or other hidden location, thus justifying the use of their firearm to neutralize potential danger to police.  *See Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009) (collecting cases).  *See also Dillard v. City of Lynchburg*, 6:22CV00031, 2023 WL 6217340, *8 (W.D. Va.

11

Sept. 25, 2023) (holding that officers' pointing their firearms "directly at the [p]laintiff" until he "put his hands up, drop[ped] to his knees, and lay face-down on the pavement" during a traffic stop based on a lookout for the plaintiff's vehicle was a reasonable "means of neutralizing potential danger to police"). Because Shifflett did not engage in unconstitutional conduct when he pointed his firearm at a fleeing criminal suspect who reached for his waistband, that incident cannot be considered by this Court in reviewing the Plaintiff's supervisory liability claim.

Assuming *arguendo* that Shifflett engaged in unconstitutional conduct when he pointed his firearm at a criminal suspect who fled across a busy four-land boulevard into the parking lot of a local diner on February 17, 2022, and when he pointed his firearm at a criminal suspect in a vehicle during a traffic stop on February 10, 2023, the Plaintiff's supervisory liability claim remains deficient because as detailed, *supra*, the potential unconstitutionality of pointing a firearm at an individual during a forced police encounter was not firmly established in the Fourth Circuit prior to 2024. As such, it cannot be said that the Supervisory Defendants knew or should have known that Shifflett was engaged in unconstitutional acts in connection with any of his prior firearm pointing incidents. *See Robinette*, 105 F.4th at 124.

The prior firearm pointing incidents are also insufficient to meet the knowledge element set forth in the first prong of the supervisory liability test because two instances of potentially

unconstitutional conduct are inadequate to show that it is sufficiently "widespread."[7] *Slakan*, 737 F.2d at 373 (A plaintiff cannot meet the knowledge element of the first prong of the supervisory liability test by "pointing to a single incident or isolated incidents.") "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins*, 751 F.3d at 226 *citing Shaw*, 13 F.3d at 799. Although the Fourth Circuit has stated that knowledge of three prior instances of unconstitutional behavior is sufficient to allege the requisite "widespread" conduct, *Shaw*, 13 F.3d at 800, courts in the Fourth Circuit have repeatedly held that a supervisor's prior knowledge of one or two prior instances is insufficient as a matter of law to establish supervisory liability. *See, e.g.*, *Keeton v. Dudley*, 753 F. Supp. 3d 444 (E.D. Va. 2024) (two prior instances of purported prior conduct were insufficient to survive a motion to dismiss); *Green v. Lilly*, 7:23CV151, 2023 WL 6564907 (W.D. Va. Oct. 10, 2023) (granting a motion to dismiss for plaintiff's failure to allege "unconstitutional conduct that is widespread" by alleging two prior instances of misconduct within five months prior to the plaintiff's injury); *Boone v. Clarke*, 1:21CV528, 2022 WL 3448043 (E.D. Va. Aug. 17, 2022) (finding that two incidents that

---

[7] Allegations that Shifflett pointed his firearm at a fleeing criminal suspect who reached for his waistband on February 10, 2023, should not be considered by this Court as to any of the Supervisory Defendants. In addition to the reasons cited *supra*, the February 10, 2023, firearm pointing incident cannot be considered as to Lee, because he was only the commander of the McLean Station from August 2021 to January 2023, and thus was only aware of Shifflett's February 17, 2022, and October 25, 2022, firearm pointing incidents, or as to Colwell, because he was only assigned to the McLean District Station from August 2021 to September 2022, and thus was only aware of the February 17, 2022, firearm pointing incident. *King v. Riley*, 76 F.4th 259, 269 (4th Cir. 2023) (holding on a motion to dismiss that supervisory liability must be "determined person by person" and that "a complaint must contain specific allegations of each individual's conduct and state of mind").

13

occurred six months apart were "insufficient to hold [the supervisors] liable under § 1983); *Moody v. City of Newport News, Va.*, 93 F. Supp. 3d 516 (E.D. Va. 2015) (allegation of one prior instance of excessive force was insufficient to survive a motion to dismiss a supervisory liability claim).

The Plaintiff's failure to allege widespread unconstitutional conduct also prevents her from meeting the deliberate indifference requirement set forth in the second prong of the supervisory liability test as to any of the Supervisory Defendants. In the context of a supervisory liability claim, deliberate indifference "entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Fourth Circuit has opined that the plaintiff's burden to establish deliberate indifference is "heavy," and requires the plaintiff to point to more than just "a single incident or isolated incidents" to establish such liability. *Slakan*, 737 F.2d at 373. *See also Dowdy v. Pamunkey Reg'l Jail Auth.*, 3:14CV003, 2014 WL 2002227 (E.D. Va. May 15, 2014) ("A plaintiff cannot satisfy his burden of showing that the supervisor's inadequate response amounted to 'deliberate indifference' or 'tacit authorization of the offensive practices' by merely 'pointing to a single incident or isolated incidents.'") A plaintiff may only establish deliberate indifference through proof of "[a] supervisor's continued inaction in the face of documented widespread abuses." *Slakan*, 737 F.2d at 373.

As to the incidents of which Lee and Colwell were aware, the Plaintiff takes issue with their alleged summary approval of the findings and conclusions made by Arnest. Specifically, the Plaintiff alleges Lee and Colwell "summarily" approved Arnest's review despite a purported

inaccuracy regarding Shifflett's distance from the criminal suspect at whom he pointed his firearm on February 17, 2022. Such allegations are insufficient as a matter of law to establish that either of them acted with deliberate indifference. In *Campbell v. Florian*, 972 F.3d 385 (4th Cir. 2020), the Fourth Circuit considered supervisory liability in the context of an inmate's claim that his Eighth Amendment rights were violated when his prison sentence was miscalculated as a result of a government attorney's interpretation of South Carolina law and its applicability to the calculation of release dates. There, a subordinate attorney drafted a memorandum outlining the law on the issue and arrived at a conclusion that was later ruled incorrect by the South Carolina Court of Appeals. *Id*. at 389-91. The attorney's supervisor "read the . . . Memo, familiarized himself with its contents, and approved it" before it was relied upon to calculate inmate release dates. *Id*. at 390-91. An inmate sued both the attorney and his supervisor for purported Eighth Amendment violations resulting from his extended release date. *Id*. at 388. As relevant herein, the Fourth Circuit reversed the district court's denial of qualified immunity for the supervisor because the supervisor's actions in approving the subordinate attorney's memo did not establish a constitutional violation. *Id*. at 399. In so holding, the Court stated that a plaintiff asserting a supervisory liability claim "must show more than mere supervision. The supervisor's own response to the knowledge of a risk of constitutional injury must be 'so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices.'" *Id*. at 398 *quoting Shaw*, 13 F.3d at 799. The Fourth Circuit concluded that the plaintiff's allegation that the "conclusory nature" of the supervisor's review and his alleged "inattention" to the memo were insufficient to establish deliberate indifference, stating that the supervisor was privileged to "rely on the good judgment of his subordinates until he had reason to believe otherwise." *Id*. at

15

399. Here, not only were Lee and Colwell not aware of the requisite number of prior instances of Shifflett's firearm pointings, they were, as a matter of law, privileged to rely on Arnest's review of those incidents in their review and approval process, and their alleged "summary approvals" of Arnest's reviews is insufficient to suggest that they acted with deliberate indifference. The Plaintiff's supervisory liability claim must therefore be dismissed as to Lee and Colwell.

Arnest was Shifflett's direct supervisor from December 2021 until February 2023 and was aware of all three of Shifflett's prior firearm pointing incidents, having reviewed all of them as Shifflett's direct supervisor. The Complaint fails to allege facts sufficient to allow the Plaintiff to proceed against Arnest on a supervisory liability theory. First, as outlined above, the Complaint describes at least one of the three prior pointing incidents (October 25, 2022) with enough particularity to permit the finding as a matter of law, even at this stage, that this incident did not rise to the level of unconstitutional behavior, and as such, the Plaintiff's supervisory liability claims cannot be based on that incident. This leaves only two prior incidents about which Arnest was aware, which is insufficient to establish supervisory liability.

Second, even considering all three of the prior incidents, the Plaintiff's allegation that Arnest violated FCPD policy in reviewing these incidents cannot form the basis for a supervisory liability claim because it does not rise to the requisite level of deliberate indifference. *See Smith v. Ray*, 409 F. App'x 641, 650 (4th Cir. 2011) (finding that a supervisor was not deliberately indifferent to complaints about a subordinate employee because the employee "was investigated following each allegation"); *McCall v. Williams*, 52 F. Supp. 2d 611, 622-23 (D. S.C. 1999) (finding that a sheriff was not deliberately indifferent to his subordinates' actions because when

16

he received complaints about the employees he would "discuss the claims with the involved officers [,review] any and all documentation regarding the underlying incident, [and] make a determination as to whether internal disciplinary measures were warranted").  The Plaintiff's failure to allege sufficient facts to support that the Supervisory Defendants were aware of widespread incidents in which Shifflett engaged in unconstitutional behavior, or that they acted with deliberate indifference in their review of the prior firearm pointing incidents, is fatal to the Plaintiff's supervisory liability claim.

Finally, the Plaintiff's supervisory liability claim is also fatally deficient as to the causation prong found in the third element of the supervisory liability test.  In cases such as the case at bar, where there are no allegations of direct causation (i.e., where a policy commands the violation), the plaintiff must "demonstrate causation according to 'the tort principle that holds a person liable for the natural consequences of his actions.'"  *Johnson*, 452 F. Supp. 3d at 306 *quoting Shaw*, 13 F.3d at 799.  *See also Carter v. Tatum*, 3:23CV239, 2023 WL 6797494, *3 (E.D. Va. Oct. 13, 2023) ("With regard to the third causation element, supervisors must have 'direct culpability' in causing the plaintiff's injuries.") *citing McWilliams v. Fairfax Cnty. Bd. of Sup's*, 72 F.3d 1191, 1197 (4th Cir. 1996).  Here, the Plaintiff has failed to allege any facts that would connect any action or inaction of any of the Supervisory Defendants with the Johnson incident.  As such, the Plaintiff cannot meet her burden of establishing an affirmative causal link sufficient to maintain a supervisory liability claim as to any of the Supervisory Defendants.

**CONCLUSION**

In consideration of the foregoing, the Supervisory Defendants request that the Court dismiss Count III of the Second Amended Complaint against them.

Respectfully submitted,

**WILLIAM ARNEST**
**SCOTT COLWELL**
**WILSON LEE**

**ELIZABETH D. TEARE**
**COUNTY ATTORNEY**

By:  /s/
**Kimberly P. Baucom, Esquire**
**Deputy County Attorney**
Virginia State Bar No. 44419
**Jamie M. Greenzweig, Esquire**
**Senior Assistant County Attorney**
Virginia State Bar No. 75066
12000 Government Center Parkway
Suite 549
Fairfax, VA   22035-0064
(703) 324-2421
(703) 324-2665 fax
kimberly.baucom@fairfaxcounty.gov
jamie.greenzweig@fairfaxcounty.gov
*Counsel for William Arnest, Scott Colwell, and Wilson Lee*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a true copy of the foregoing to the following:

Victor M. Glasberg, Esquire
Abigail S. Grand, Esquire
121 S. Columbus Street
Alexandria, Virginia 22314
vmg@robinhoodesq.com
agrand@robinhoodesq.com
Counsel for Plaintiff

Carl L. Crews, Esquire
2776 S. Arlington Mill Drive, #186
Arlington, Virginia 22206
legal@attorneycarlcrews.com
Counsel for Plaintiff

David P. Corrigan, Esquire
Andrew D. Mullen, Esquire
Blaire Hawkins O'Brien, Esquire
Harman Claytor Corrigan & Wellman
Post Office Box 70280
Richmond, VA 23255
(804) 747-5200
dcorrigan@hccw.com
amullen@hccw.com
bobrien@hccw.com
Counsel for Defendant Wesley Shifflett


                                                                         /s/_____
                                                      Kimberly P. Baucom